UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ALAN G. OLHAUSEN, JR., | Civil No. 07-4593 (MJD/JSM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| JOAN FABIAN (Commissioner of Corrections), GUY BOSCH, (MN Department of Corrections), Warden FENEIS (Mcf Rush City), Assistant Warden ZAWACKI (Rush City), BETH WALKER (Job Assignment Coordinator), and MARY AITKENS (Corrections Programs Director), | |
| Defendants. | |

Plaintiff, a prisoner at the Minnesota Correctional Facility at Rush City, Minnesota, ("MCF-RC"), commenced this action by filing a self-styled pleading entitled "Complaint For Violation of Civil Rights Under 42 U.S.C. 1983." (Docket No. 1.) The matter has been assigned to this Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1] For the reasons discussed below, the Court finds that plaintiff's Complaint fails to state a claim on which relief can be granted, and that this action should therefore be summarily dismissed pursuant to § 1915A(b)(1).

---

[1] Plaintiff did not tender the required filing fee with his Complaint, but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) It appears from plaintiff's IFP application that he may be unable to pay even the initial partial filing fee that prisoners are required to pay pursuant to 28 U.S.C. § 1915(b)(1). Thus, the Court finds, at least for now, that Petitioner has "no assets and no means by which to pay the initial partial filing fee," (28 U.S.C. § 1915(b)(4)), and that this matter should proceed directly to the initial screening process prescribed by § 1915A.

I.     BACKGROUND

Plaintiff's Complaint does not describe any specific events that have affected him personally. Instead, his Complaint merely describes certain prison policies that are generally applicable to all Minnesota state prisoners who are housed at the Prairie Correctional Facility, ("PCF") – a privately operated prison facility located in Appleton, Minnesota.

Plaintiff alleges that the State of Minnesota has entered into a contract with the owners of PCF, which allows the Minnesota Department of Corrections, ("DOC"), to send certain Minnesota prisoners to PCF. According to the Complaint, prisoners who receive disciplinary punishments while they are housed at PCF must complete their punishments at PCF. Some prisoners who have committed certain types of disciplinary offenses, (or a certain quantity of disciplinary offenses), are returned to State-operated prisons after their punishments are completed. Plaintiff alleges that those inmates are then subjected to certain additional punishments that are imposed by the DOC.

Plaintiff specifically alleges that returnees from PCF are automatically assigned to MCF-RC, even if their custody/security classification would otherwise cause them to be assigned to a less restrictive facility. He alleges that returnees from PCF are punished in other ways as well. Those returnees allegedly are placed in segregated housing, and their recreation privileges are reduced. They also are prohibited from obtaining prison work assignments, because they are placed on "Unassigned Idle status." Plaintiff claims that the various restrictions and sanctions imposed on returnees from PCF "violates the inmates['] vested right to be free from this type of additional punishment." (Complaint, [Docket No. 1], p. 8, ¶ 45.)

Plaintiff is attempting to sue six DOC employees who allegedly are responsible for the additional punishments that allegedly are imposed on returnees from PCF. He is seeking a judgment against the six defendants that would award him $20,000 for "emotional distress." He is also seeking other relief, including a court order that would compel the DOC to "address the aforementioned matters and or create policy that incorporates the manifest injustice" described in the Complaint. (Complaint, p. 3.)

## II.   DISCUSSION

Because plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1). The Court finds that the present action must be summarily dismissed pursuant to § 1915A(b)(1), because plaintiff's Complaint fails to state any claim on which relief can be granted.

Plaintiff's Complaint fails to state an actionable claim for relief because there are no allegations showing that he personally has suffered any violation of any protected legal rights. "A federal court's jurisdiction... can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" Warth v. Seldin, 422 U.S. 490, 499 (1975), quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973) (emphasis added). To state an actionable claim, "[a] prisoner must allege a

personal loss[;]... [he] lacks standing to bring claims alleging mistreatment of others." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). See also Hooker v. Pazera, No. 3:92-CV-715RM (N.D.Ind. 1996), 1996 WL 476658 at *4 (prisoner "has no standing to assert the rights of other prisoners and may only challenge violations of his own rights") (citing Martin and 22 other federal cases holding that prisoners may sue only for their own injuries).

In this case, there are no allegations in the Complaint showing that plaintiff himself has been subjected to any specific disciplinary punishment.  Instead, plaintiff alleges only that the DOC has adopted certain policies which result in wrongful disciplinary sanctions against inmates in general.  However, an inmate cannot rely on the experiences of other inmates to support his own claims.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999) (prisoner litigant failed to state an actionable claim for relief because he "failed to allege that it was he, rather than other prisoners, who was subjected to certain allegedly unconstitutional conditions").  Because plaintiff has not shown that he has personally suffered any harm as a result of the DOC policies described in his Complaint, he has not stated an actionable claim for relief.

Furthermore, even if plaintiff has been personally affected by the policies described in his Complaint, this case still would have to be summarily dismissed.  To state an actionable civil rights claim under 42 U.S.C. § 1983, as plaintiff apparently is attempting to do here,[2] a complainant must allege facts, which if proven true, would demonstrate that the

---

[2] Plaintiff's Complaint includes several references to a contract between the DOC and the owners of PCF, and there are some allegations in the Complaint which seem to suggest that he might be attempting to assert a breach of contract claim in this case. However, plaintiff obviously cannot sustain such a claim, because he is not a party to any such contract. Furthermore, if plaintiff's claims were based on a breach of contract theory, this case would have to be dismissed for lack of subject matter jurisdiction. The Court also

4

named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory:  the complaint must allege facts, which if true, state a claim as a matter of law."  Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

The only conceivable § 1983 claim that can be found in plaintiff's Complaint, (by giving it the benefit of a very liberal construction), is a due process claim.  To state an actionable due process claim, plaintiff would have to allege facts showing that he was deprived of some constitutionally protected liberty interest, without being afforded the procedural protections of due process.  Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake").  However, a constitutionally protected interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995).

In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life."  Id. at 484.  Our Court of Appeals has interpreted Sandin to mean that prisoner due process rights are implicated only when there have been

---

notes that plaintiff seems to be claiming that he is entitled to a judgment against defendants, because they have not properly followed and implemented various DOC policies.  This theory is also unavailing, because "a violation of prison regulations in itself does not give rise to a constitutional violation."  Bonner v. Federal Bureau of Prisons, 196 Fed.Appx. 447, 448 (8th Cir. 2006).  See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations").

"deprivations which work such <u>major disruptions</u> in a prisoner's environment and life that they present <u>dramatic departures</u> from the basic conditions and ordinary incidents of prison sentences."  <u>Moorman v. Thalacker</u>, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added.)

Plaintiff's current Complaint does not state an actionable due process claim because there are no factual allegations suggesting that he has been subjected to the type of significant hardship that <u>Sandin</u> requires.  The only "hardships" alleged in the Complaint involve (a) being assigned to a more restrictive prison facility, (b) being placed in segregated confinement, (c) being deprived of the opportunity to hold a prison job, and (d) being deprived of other customary prison privileges.  While those circumstances undoubtedly would make plaintiff's confinement more difficult and unpleasant, (assuming he has actually been subjected to those circumstances), they clearly are <u>not</u> the type of "atypical and significant hardship" contemplated by <u>Sandin</u>.

Federal courts have repeatedly recognized that unwanted prison transfers, segregated confinement, lost privileges, and lost opportunities for work, education and rehabilitation, are <u>normal and expectable experiences of prison life</u>, and they are <u>not</u> the type of "atypical and significant hardship" that implicate constitutionally protected liberty interests.  <u>Freitas v. Ault</u>, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution); <u>Callender v. Sioux City Residential Treatment Facility</u>, 88 F.3d 666, 668-69 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); <u>Moorman</u>, 83 F.3d at 971 (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility); <u>Portley-El</u>

v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("administrative and disciplinary segregation are not atypical and significant hardships under Sandin").  See also Olim v. Wakinekona, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting Meachum v. Fano, 427 U.S. 215, 228 (1976); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994) (per curiam) ("[t]he Due Process Clause does not itself create a liberty interest in a particular prison classification"); Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976) (prisoner's interest in participating in "rehabilitative programs" is not "sufficient to invoke due process").

The Court specifically notes that the loss of a job opportunity, (i.e., "Unassigned Idle status"), cannot give rise to a due process claim.  Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence.  Callender, supra; Freitas, supra; Dominque v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995).  See also Burton v. Evans, No. 01 C 3328 (N.D.Ill. May 2, 2002) 2002 WL 832590 at *5 ("[a] prisoner's interest in having a job is not protected as a liberty interest by the Due Process Clause").

In sum, even assuming that plaintiff is a returnee from PCF, and assuming that he has had to endure all of the unpleasantries described in his Complaint, he has not described any circumstances that would satisfy Sandin's "atypical and significant hardship" standard.  Plaintiff simply does not have a "vested," constitutionally-protected right to any particular prisoner classification, or to be housed in any particular prison facility, or to remain in the general prison population, (as opposed to segregated confinement), or to work at a prison job, or to participate in prison rehabilitation programs, or to enjoy all of the

common privileges of prison life. Therefore, plaintiff cannot sustain a § 1983 civil rights claim based on the allegations in his Complaint.

## III.   CONCLUSION

For the reasons discussed above, the Court concludes that plaintiff has failed to plead a cause of action on which relief must be granted, and that this case must therefore be dismissed pursuant to 28 U.S.C. § 1915A(b). Because plaintiff has not stated any viable claim in his Complaint, his application for leave to proceed IFP, (see n. 1, supra), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[3] To date, he has not paid any fee at all, so he still owes the full $350 fee. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, the Court will recommend that the dismissal of this action be counted as a "strike" against plaintiff for purposes of 28 U.S.C. § 1915(g).

---

[3] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

**IV.     RECOMMENDATION**.

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.      Plaintiff's application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, (Docket No. 2), be **DENIED**;

2.      This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3.      Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the full $350, in accordance with 28 U.S.C. § 1915(b)(2); and

4.      The dismissal of this action be counted as a "strike" against plaintiff for purposes of 28 U.S.C. § 1915(g).


Dated:      December 3, 2007


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 31, 2007**,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.